# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

## PEOPLE v KLUNGLE

Docket Nos. 168010 and 168011. Argued on application for leave to appeal April 8, 2026. Decided July 6, 2026.

Richard E. Klungle was convicted following a jury trial in the Emmet Circuit Court of one count of trespassing, MCL 750.552, and two counts of resisting or obstructing a police officer, MCL 750.81d(1). Defendant moved for a new trial and an evidentiary hearing, arguing that he was denied his Sixth Amendment right to counsel and right to maintain his innocence when trial counsel conceded defendant's guilt on the trespassing charge. During the hearing, trial counsel testified that defendant had maintained his innocence of the charges, but counsel had used his "best legal judgment" by deciding to concede guilt on trespassing in the hope that he would maintain his credibility with the jury and obtain an acquittal on the felony charges. Counsel did not inform defendant of his plan to concede guilt, and defendant did not tell him to concede guilt. The trial court, Jennifer Deegan, J., denied the motion for a new trial, and the Court of Appeals, CAMERON, P.J., and JANSEN and SWARTZLE, JJ., affirmed. ___ Mich App ___ (November 19, 2024) (Docket Nos. 364125 and 367795). Defendant applied for leave to appeal in the Michigan Supreme Court, which ordered oral argument on the application. ___ Mich ___; 20 NW3d 573 (2025).

In a unanimous opinion by Justice BOLDEN, the Supreme Court *held*:

Trial counsel's concession of guilt on the trespassing charge violated defendant's Sixth Amendment right of autonomy to maintain innocence on all charges as the objective of his defense. Under *McCoy v Louisiana*, 584 US 414 (2018), this was a structural error that requires automatic reversal.

1. The Sixth Amendment, US Const, Am VI, guarantees a criminal defendant the right to the assistance of counsel for their defense. When represented by counsel, a defendant generally relinquishes control over trial management to their attorney, but the accused retains complete autonomy over certain fundamental choices, including the right to decide that the objective of the defense is to assert innocence. In *McCoy*, the United States Supreme Court held that when a client expressly asserts that the objective of their defense is to maintain innocence of the charged acts, the client's lawyer must abide by that objective and may not override it by conceding guilt. The Court further held that ineffective-assistance-of-counsel jurisprudence did not apply in these situations because a client's autonomy, not counsel's competence, was at issue. The violation of

a defendant's Sixth Amendment right of autonomy is a structural error requiring reversal without a showing of prejudice. Although *McCoy* was a capital murder case, a defendant's right to maintain innocence applies in all criminal prosecutions, and the Sixth Amendment principles from *McCoy* are not limited to capital cases.

2. Under *McCoy*, the concession of guilt by trial counsel here violated defendant's right of autonomy to claim innocence as the objective of his defense. Like in *McCoy*, the expressed pretrial objective of defendant was to maintain his innocence, and as in *McCoy*, trial counsel was aware of defendant's desire. Additionally, like in *McCoy*, defendant here testified at trial and maintained his innocence while doing so. While communication between defendant and trial counsel had deteriorated by the time of trial, what matters under *McCoy* is trial counsel's confirmation at the evidentiary hearing that during his conversations with defendant about the objective of the defense for trial, defendant maintained his innocence. Knowing this, trial counsel could not disregard defendant's prior statements and concede guilt without first consulting him. The lower courts' reliance on the fact that defendant never told counsel *not* to concede guilt turned the inquiry on its head, ignoring the attorney's duty of consultation and placing the burden on a client to tell his attorney what not to do. The Court of Appeals erred by concluding that the facts of this case were more similar to *Florida v Nixon*, 543 US 175 (2004), another capital case in which defense counsel believed that the best strategy to save his client's life was to concede guilt. *Nixon* is plainly distinguishable from this case because its holding is limited to situations in which defense counsel consults the client regarding a concession strategy and the client is unresponsive. Here, there was no dispute that such a consultation did not happen, so the rule from *Nixon* did not apply.

3. A client need not contemporaneously object to their attorney's conduct to establish a Sixth Amendment claim that their right of autonomy was violated. The fact that the defendant in *McCoy* "adamantly" objected to his attorney's concession when it was made at trial does not mean that the failure to do so is fatal in all other cases. The right of autonomy to maintain innocence is not lost simply because a client fails to contemporaneously object, particularly where the attorney never discusses a concession strategy with the client and therefore deprives the client of an adequate opportunity to object. Additionally, where a defendant is represented by counsel, that attorney acts and speaks on behalf of the defendant; trial courts generally do not allow the represented defendant to speak whenever they choose, and this case was no different. The record shows that defendant tried to speak during trial after defense counsel's closing argument and again after the prosecutor's rebuttal argument, and on both occasions, the trial court instructed defendant to remain quiet and not interrupt. Requiring a defendant to contemporaneously object on their own behalf to their attorney's conduct at trial would be impractical and inconsistent with our system of attorney-client representation. Nor is a contemporaneous objection by a client to their attorney's concession of guilt necessary to preserve this type of Sixth Amendment claim. Assuming without deciding that a *McCoy* violation is an error that is subject to forfeiture, defendant preserved his claim by raising it with the trial court in a timely postjudgment motion for new trial and evidentiary hearing.

4. Defendant is entitled to a new trial on all charges because the structural error in conceding guilt on the trespassing charge was intrinsically harmful given that it rendered unfair or unreliable the determining of guilt or innocence by the jury on the resisting-or-obstructing charges.

Trial counsel contested the resisting-or-obstructing charges. But all the charges against defendant were interconnected, in that defendant allegedly failed to comply with lawful commands and physically resisted police officers while refusing to leave the property on which he was trespassing. Because the common law grants the right to resist an unlawful arrest by an officer, the prosecutor had to establish as an element of resisting or obstructing that the officers acted lawfully when they arrested defendant for trespassing. Conceding guilt on the trespassing charge necessarily undermined any challenge to the lawful-act element.

Court of Appeals judgment reversed, convictions vacated, and case remanded to the trial court.

# OPINION

Chief Justice:
   Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED July 6, 2026

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v                                       Nos. 168010; 168011

RICHARD EDWARD KLUNGLE,

     Defendant-Appellant.

BEFORE THE ENTIRE BENCH

BOLDEN, J.

In *McCoy v Louisiana*, 584 US 414, 422; 138 S Ct 1500; 200 L Ed 2d 821 (2018), the Supreme Court recognized an accused's Sixth Amendment right of autonomy to maintain innocence as the objective of the defense and confirmed that this right is reserved for the defendant. In this case, we consider whether trial counsel's decision to concede the guilt of defendant, Richard Klungle, on a trespassing offense violated this Sixth Amendment guarantee. We hold that it did. Klungle consistently asserted his innocence

to his attorney before trial and testified in his own defense that he did not believe he was trespassing. Despite knowing that Klungle adamantly believed he had done nothing wrong, defense counsel admitted Klungle's guilt to the jury for the first time during closing argument and never consulted Klungle about this strategy. Under *McCoy*, this concession constituted a structural error that deprived Klungle of the autonomy to maintain his innocence on all charges. We therefore reverse the judgment of the Court of Appeals, vacate Klungle's convictions and sentences, and remand this case to the Emmet Circuit Court for further proceedings.

## I. FACTUAL BACKGROUND

The convictions in this case arise out of a familial dispute over the ownership of property. Klungle lived with his children and his grandmother for five years in a home that his grandmother owned until she died in 2022. Because she died without a will, the home passed to her four children, not Klungle. He nonetheless refused to leave the home, believing that his grandmother intended for him to inherit it. Eviction proceedings were initiated by the grandmother's estate, resulting in a court order that Klungle vacate the premises. After Klungle did not comply, a final notice of eviction was placed on the front door of the home. A few days later, with Klungle still residing inside, officers with the Emmet County Sheriff's Department came to the home to enforce the eviction order. When Klungle refused to leave, the officers informed him that he was being arrested for trespassing. Klungle did not comply with the officers' commands as they physically removed him from the property. For his actions, Klungle was charged with one misdemeanor count of trespass and two felony counts of resisting or obstructing a police

2

officer. Attorney Peter Lyons was appointed to represent him. They had an existing relationship at the time. Lyons was already representing Klungle in a separate criminal matter, and while that case was pending, Lyons had also agreed to represent Klungle in the civil eviction case. Before the instant case went to trial, Klungle was convicted of domestic violence in the other criminal case.

At trial here, Lyons told the jury during opening statements that Klungle believed he "still ha[d] the right to occupy this property based on the agreements that he had with his grandparents"[1] and therefore felt "he was on the property lawfully." Lyons opined that the evidence would lead the jury to find Klungle not guilty of all charges. In its case-in-chief, the prosecution introduced the eviction order as evidence, as well as testimony and body-camera footage from the officers who arrested Klungle. After the prosecution rested, Klungle chose to testify in his own defense. He admitted that he had remained in the home after receiving the eviction notice. But he testified that he "[did] not feel [he] was trespassing" because the home had been purchased for him and his children, and he believed he had the right to remain in the home. The defense rested without presenting any additional evidence. In his closing argument, Lyons changed tactics, telling the jury that Klungle trespassed:

> I'm not going to sit here and try and tell you this is not a trespass. . . . [T]he proofs would show that a trespass was committed. I'm not going to try and tell you something that I don't think the evidence supports. I think the evidence does support that.

---

[1] Before moving into the home at issue, Klungle had lived with his grandfather and grandmother at a different residence.

Lyons asked the jury to find Klungle guilty of trespassing but not guilty of the resisting-or-obstructing offenses. Klungle attempted to speak afterward, but the trial court directed him to remain quiet. The jury returned a guilty verdict on all counts.

After sentencing, Klungle moved for a new trial and an evidentiary hearing, arguing that he was denied his Sixth Amendment right to counsel and right to maintain innocence when Lyons conceded his guilt on the trespassing charge. The trial court held an evidentiary hearing to consider testimony from Lyons and Klungle. Lyons explained that his relationship with Klungle had worsened after the domestic-violence conviction. Although Klungle never refused to meet with Lyons before trial, Lyons felt that he could not have meaningful discussion with Klungle about the charges in this case, and by the time of trial, their relationship had "deteriorated" to the point that Klungle was not speaking with him. Importantly, however, Lyons confirmed that when they had previously discussed the charges, Klungle maintained his innocence. Lyons also confirmed that Klungle was unwilling to admit to the facts that would have been necessary to enter a guilty plea. Specifically, Klungle "never accepted" that he lacked a legal claim to remain in the home, and Lyons could not "dislodge" Klungle's "fixed belief" that the property "was his" and that "he had not done anything" to justify the charges brought against him.

Regarding the decision to concede guilt, Lyons admitted that he was unaware of *McCoy* at the time of trial. He also never informed Klungle of the planned concession, nor did Klungle ever tell Lyons to concede his guilt. At the same time, Klungle never instructed Lyons *not* to concede guilt. Lyons believed that "in the absence of that instruction" and without "any meaningful communication" from Klungle, he was left to use his "best legal judgment" to defend against the charges. Lyons hoped that by conceding guilt on

4

trespassing, for which he saw no viable defense, he would maintain his credibility with the jury and obtain an acquittal on the felony charges. Klungle, meanwhile, testified that he told Lyons he was innocent before trial and that Lyons never discussed with him any plan to concede guilt as to the trespass charge. Klungle said he would have opposed a concession if he had known it was going to occur.

The trial court denied the motion for a new trial, explaining that Klungle had a "duty to assist [Lyons] in trial preparation" but would not speak with Lyons and never told him not to concede guilt. In the court's view, therefore, Lyons was entitled to manage the defense in a manner he thought was "prudent and wise" and did not violate Klungle's fundamental rights by doing so. In a published opinion, the Court of Appeals affirmed. *People v Klungle*, ___ Mich App ___; ___ NW3d ___ (November 19, 2024) (Docket Nos. 364125 and 367795). The panel reasoned in part that, because Klungle had refused to communicate with Lyons and "did not express a contrary instruction" to the partial concession, Lyons "properly exercised his discretion in implementing what he reasonably believed was the most prudent trial strategy." *Id*. at ___; slip op at 4.

Klungle then sought leave to appeal here. We ordered oral argument on the application and directed the parties to address "whether trial counsel's concession of the defendant's guilt to trespassing deprived the defendant of his right to counsel and of the autonomy to decide that the objective of the defense is to assert his innocence." *People v Klungle*, ___ Mich ___, ___; 20 NW3d 573, 574 (2025).[2]

---

[2] Klungle's application for leave to appeal also raised a sentencing argument. In light of our resolution of this appeal, the sentencing challenge is moot and therefore unnecessary to address.

## II. LEGAL BACKGROUND

The Sixth Amendment of the United States Constitution guarantees a criminal defendant the "Assistance of Counsel for his defence," US Const, Am VI, and the Fourteenth Amendment incorporates the right to counsel in state prosecutions, *Gideon v Wainwright*, 372 US 335, 342-345; 83 S Ct 792; 9 L Ed 2d 799 (1963). When represented by counsel, a defendant generally relinquishes control over "[t]rial management," including tactical decisions like what objections to make and which lines of questioning to pursue, as that is "the lawyer's province." *McCoy*, 584 US at 422. But the accused retains complete autonomy over certain fundamental choices, including "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." *Id*. At issue here is another aspect of the representation reserved for the client: the "[a]utonomy to decide that the objective of the defense is to assert innocence." *Id*.

Central to understanding the scope of this Sixth Amendment right is the Supreme Court's decision in *McCoy*. That was a capital murder case where defense counsel believed that, absent a concession of guilt by the defendant, Robert McCoy, a death sentence would be impossible to avoid during the penalty phase of trial. *Id*. at 418. When counsel advised McCoy of this proposal, McCoy told counsel not to make such a concession and to pursue an acquittal. *Id*. at 419. Nonetheless, at trial, counsel told the jury during the opening statement and closing argument that McCoy was the killer. *Id*. at 419-420. McCoy "adamantly" objected; he also testified and pressed his claim of innocence with an alibi theory that was "difficult to fathom." *Id*. at 417, 419-420. The jury convicted McCoy and voted for a death sentence. *Id*. at 420.

6

The Supreme Court held that "[w]hen a client expressly asserts that the objective of '*his* defence' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." *Id*. at 423, quoting US Const, Am VI. Therefore, when McCoy expressed to counsel that he was opposed to admitting responsibility, counsel could not override McCoy's objection. *Id*. at 424. The Court also explained that because a client's autonomy and not counsel's competence was at issue, ineffective-assistance-of-counsel jurisprudence did not apply. *Id*. at 426. Instead, the violation of a defendant's Sixth Amendment right of autonomy is a structural error, requiring reversal without a showing of prejudice. *Id*. at 427-428. Accordingly, the Court ordered a new trial for McCoy. *Id*. at 428.

The Court in *McCoy* also distinguished its holding from *Florida v Nixon*, 543 US 175; 125 S Ct 551; 160 L Ed 2d 565 (2004), another capital prosecution where defense counsel believed that the best strategy to save the life of his client, Joe Elton Nixon, was to concede guilt. *Id*. at 181. In that case, Nixon's attorney attempted to explain the proposed concession strategy to his client at least three times. *Id*. But whereas McCoy opposed his attorney's admission of guilt at every opportunity, Nixon was unresponsive and "never verbally approved or protested" counsel's recommendation. *Id*.; see *McCoy*, 584 US at 417-420. Escalating matters, Nixon's behavior shifted to disruption and violence during jury selection for his trial. *Nixon*, 543 US at 182. He refused to be escorted to the courtroom and threatened to continue to misbehave if forced to attend the proceedings. *Id*. As a result, Nixon was not present in the courtroom during the guilt phase of trial. *Id*. Faced with this reality, Nixon's counsel exercised his professional judgment and conceded

his client's guilt at trial. *Id*. at 181-183. The strategy was unsuccessful, as the jury recommended—and the trial court imposed—a sentence of death. *Id*. at 184.

The Supreme Court rejected Nixon's argument that trial counsel provided ineffective assistance by conceding guilt without obtaining Nixon's express consent. *Id*. at 189-192. The Court reaffirmed that an attorney "has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy." *Id*. at 187, quoting *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). But "[w]hen counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest and the defendant is unresponsive, counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent." *Nixon*, 543 US at 192. So long as that strategy satisfies *Strickland*'s standard of objectively reasonable performance, the defendant cannot establish that he was deprived of the effective assistance of counsel. *Id*. Thus, in contrast to *McCoy*, the right of autonomy was not at issue. See *McCoy*, 584 US at 424 ("Nixon's attorney did not negate Nixon's autonomy by overriding Nixon's desired defense objective, for Nixon never asserted any such objective.").

## III. DISCUSSION

Klungle argues that trial counsel's unilateral decision to concede his guilt on the trespassing charge violated his Sixth Amendment right of autonomy as recognized in *McCoy*. We review this question of constitutional law de novo, meaning independently and without deference to the lower courts. *People v Beck*, 504 Mich 605, 618; 939 NW2d

8

213 (2019).  Before turning to the substance of the argument, we address a threshold matter raised by the prosecution.

## A.  RIGHT OF AUTONOMY IN NONCAPITAL CASES

The prosecution briefly suggests that it is "questionable" whether *McCoy* even applies to noncapital cases like this one.  Not so.  Numerous statements from *McCoy* support a broader application of its holding to noncapital cases.  See, e.g., *McCoy*, 584 US at 422 (comparing the right of autonomy to maintain innocence with a defendant's choice to refuse to plead guilty or reject the assistance of counsel); *id*. at 423 ("Counsel, in any case, must still develop a trial strategy and discuss it with her client, explaining why, in her view, conceding guilt would be the best option.") (citation omitted).  A defendant's right to maintain innocence—just like the other fundamental decisions listed in *McCoy* that are reserved for the accused—applies in all criminal prosecutions.  See *Grant v Comm'r of Correction*, 345 Conn 683, 697 n 7; 287 A3d 124 (2022) (agreeing that *McCoy* applies outside of the capital context and noting that "[i]t is axiomatic that the [S]ixth [A]mendment applies to *all* criminal prosecutions and that the rights secured thereunder do not turn on the severity of the potential punishment for an offense").  While *McCoy* arises out of a capital case, the Sixth Amendment principles from the decision are not so limited.

## B.  APPLICATION OF *McCOY*

We now turn to the crux of Klungle's argument.  He contends that a straightforward application of *McCoy* establishes a violation of his right of autonomy and that *Nixon* does not apply to the circumstances of his case.  The prosecution counters that

Klungle is not entitled to relief under *McCoy* and that *Nixon* governs trial counsel's failure to consult.

While this case is not on all fours with either decision, we hold that the circumstances correspond more with *McCoy*. Like in *McCoy*, Klungle's expressed pretrial defense objective was to maintain his innocence. Like in *McCoy*, defense counsel was aware that Klungle wanted to assert innocence and would not admit to wrongdoing. And like in *McCoy*, Klungle testified at trial and maintained his innocence while doing so. Under those circumstances, Lyons could not unilaterally concede guilt. In concluding otherwise, the Court of Appeals erred in several respects.

To start, the Court of Appeals reasoned that Klungle's lack of communication with Lyons forced Lyons to make a reasonable strategic decision about concession. In support, the panel quoted *McCoy*'s statement that "[i]f a client declines to participate in his defense, then an attorney may permissibly guide the defense pursuant to the strategy she believes to be in the defendant's best interest." *McCoy*, 584 US at 424. Simply put, Klungle did not decline to participate in his defense. Most obviously, he testified in his own defense about the circumstances of the offense. Earlier in the trial, too, the record reflects that Lyons conferred with Klungle. True, meaningful communication had deteriorated leading up to trial and their relationship had broken down.[3] But so had the attorney-client relationship in *McCoy*, where the defendant tried to terminate counsel's representation on the eve of trial. *Id*. at 419. Thus, what matters for the analysis under *McCoy* is Lyons's confirmation

---

[3] This breakdown stemmed, at least in part, from counsel's disagreement with Klungle about the validity of his claim of innocence.

that—when they had previously spoken about the objective of the defense for trial—Klungle maintained his innocence. Knowing this, Lyons could not disregard Klungle's prior statements and concede guilt without first consulting him. See *id*. at 424 ("Presented with express statements of the client's will to maintain innocence, . . . counsel may not steer the ship the other way."). The fact that Klungle never told Lyons *not* to concede guilt flips the inquiry on its head, ignoring the attorney's duty of consultation and placing the burden on a client to tell his attorney what not to do.

Further, the Court of Appeals erred by concluding that *Nixon* was more on point. *Nixon* is plainly distinguishable from this case, as its holding is limited to situations where defense counsel consults the client about a concession strategy and the client is unresponsive. *McCoy* confirmed this understanding of *Nixon*. See *id*. at 417 (describing *Nixon* as holding that "when counsel confers with the defendant and the defendant remains silent, neither approving nor protesting counsel's proposed concession strategy," the defendant's explicit consent to that strategy is not required). There's no dispute that this consultation never happened here, so the rule from *Nixon* does not apply. See also *United States v Hashimi*, 110 F4th 621, 630 (CA 4, 2024) ("[*Nixon*'s] rule does not apply when a lawyer fails his initial duty of consultation, conceding guilt to a jury without first consulting with his client and seeking the client's views.").[4]

The Court of Appeals also drew a distinction between Klungle's "generalized claim of innocence" and McCoy's claim of factual innocence. *Klungle*, ___ Mich App at ___;

---

[4] Although the decisions of lower federal courts are not binding on us, we may consider these decisions for their persuasive value. See *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

11

slip op at 4. The panel reasoned that, whereas McCoy contested the facts of the charged crime and presented an alibi defense, Klungle "did not challenge the factual basis for the trespassing charge" and made only a "generalized claim of ownership of the home" without sufficient factual support. *Id*. at \_\_\_; slip op at 4. This distinction is legally insignificant. As *McCoy* made clear, "a defendant has the right to insist that counsel refrain from admitting guilt" and to leave the prosecution to its burden of proving guilt beyond a reasonable doubt. *McCoy*, 584 US at 417-418. This principle does not turn on whether, in a trespass case, the defendant adequately supported his subjective belief that he did not trespass because he had "legal authority to remain on the property." M Crim JI 25.7(6).[5] Just as the accused may prefer "taking a chance at trial" despite "almost certain" conviction, so may the accused choose to maintain innocence despite a legally flawed belief of no wrongdoing. *McCoy*, 584 US at 423 (quotation marks, citation, and brackets omitted). As Lyons put it at the evidentiary hearing, Klungle could not be "dislodge[d]" from his "fixed belief" that he was innocent. The Sixth Amendment protected Klungle's right to assert this belief as the objective of his defense.

We do not question that Lyons felt he was using his "best legal judgment" when he chose to admit Klungle's guilt on the trespassing charge. But whether a concession of guilt is well-intended or a reasonable trial strategy is not the question we ask under *McCoy*. Rather, a client who wishes to maintain their innocence has the right to do so, no matter

---

[5] Notably, the use note for the Model Criminal Jury Instruction for trespassing advises that this "legal authority" element should be read to the jury only "where the defendant presents some evidence that he or she had a legal right to remain on the premises." M Crim JI 25.7, use note. The trial court in this case instructed the jury that the prosecution had to prove this element.

12

how ill-advised or unwise that decision may be. Counsel may not unilaterally override that decision as a matter of professional judgment. Instead, *McCoy* authorizes a concession of guilt under these circumstances only when counsel first consults the client and the client either approves the strategy or, like in *Nixon*, remains unresponsive. In this case, Klungle expressed his innocence to Lyons before trial and maintained this position on the witness stand. Nonetheless, Lyons shifted strategy during closing argument by admitting Klungle's guilt on the trespassing charge without ever consulting Klungle about this plan. We therefore hold that this concession of guilt violated Klungle's right of autonomy to claim innocence as the objective of his defense.

## C. CONTEMPORANEOUS OBJECTION

In opposing relief for Klungle, the prosecution counters that his failure to contemporaneously object to the concession of guilt, like the defendant in *McCoy*, renders the claim both unpreserved and facially deficient. The legal rule from *McCoy*, the prosecution contends, is that a defendant must voice an "intransigent and unambiguous" objection to their attorney's concession of guilt to make out a Sixth Amendment autonomy claim. See *McCoy*, 584 US at 420. We do not read *McCoy* so narrowly.

In our view, the holding from *McCoy* is: "When a client expressly asserts that the objective of '*his* defence' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." *McCoy*, 584 US at 423, quoting US Const, Am VI. The fact that McCoy "adamantly" objected to his attorney's concession when it was made at trial does not mean that the failure to do so is fatal in all other cases. The right of autonomy to maintain innocence is not lost simply

13

because a client fails to contemporaneously object. That is particularly so where the attorney never discusses a concession strategy with their client and therefore deprives the client of an adequate opportunity to object. See *Hashimi*, 110 F4th at 630 ("*McCoy* puts the obligation on the lawyer, requiring that before counsel may make a concession of guilt to the jury, he must discuss his plan with the defendant."); *United States v Schaffer*, 731 F Supp 3d 382, 390-391 (ND NY, 2024) ("[C]ounsel cannot affirmatively concede guilt on a charged crime without putting the client on notice of the plan and giving them some kind of opportunity to raise an objection.").

Moreover, when the unadvised concession comes for the first time at the end of trial, the inability to object is heightened. See *id*. at 384-385, 390 (holding that the defendant was denied any opportunity to object when his attorney suddenly conceded guilt during closing argument). Were it otherwise, an attorney could refuse to consult their client about a plan to concede guilt—despite knowing the client wished to maintain innocence—and proceed with that concession without violating the client's right of autonomy, so long as the client did not immediately speak up. While a defendant may have better luck *proving* their *McCoy* claim after a conviction if they made a contemporaneous objection at trial,[6] that is distinct from whether such conduct is a necessary element of the claim.

Another reason we do not read *McCoy*'s holding to mandate a contemporaneous objection is a practical one. When a defendant is represented by counsel, that attorney acts and speaks on the defendant's behalf; trial courts generally do not allow the represented

---

[6] For instance, depending on the circumstances, a contemporaneous objection might obviate the need for a postconviction evidentiary hearing like that which occurred in this case.

defendant to speak whenever they may choose. This case is no different. After Lyons ended his closing argument, and after the prosecutor's rebuttal argument, the transcript twice reflects an attempt by Klungle to speak. Both times, the trial court instructed Klungle to remain quiet and not interrupt. We cannot speculate whether Klungle was attempting to object to his attorney's partial concession of guilt on either of these occasions; the point is that, whatever he was attempting to say, the trial court did not allow him to make a record. Requiring a defendant to contemporaneously object on their own behalf to their attorney's conduct at trial would therefore be impractical and inconsistent with our system of attorney-client representation. See *Hashimi*, 110 F4th at 630 n 4 (disagreeing that a client must object in open court to establish a *McCoy* violation by explaining that "we do not craft legal rules to encourage clients to speak out of turn in court"). We are unaware of any other context during a trial where a represented defendant is required to object, without prompting by the trial court, to their attorney's decision. In sum, requiring a defendant to contemporaneously object to an attorney's concession of guilt when it occurs is neither legally required by *McCoy* nor practically wise.

The impracticality of this requirement also informs the question of preservation. Many claims of error require a contemporaneous objection for appellate preservation, including some claims of structural error. See *People v Davis*, 509 Mich 52, 65; 983 NW2d 325 (2022). Common justifications for that rule are that litigants are "best equipped to respond to alleged errors at the time they occur," *People v Cain*, 498 Mich 108, 114; 869 NW2d 829 (2015), and that a timely objection similarly allows a trial court "the opportunity to correct the error" in the moment, *People v Vaughn*, 491 Mich 642, 674; 821 NW2d 288 (2012). These justifications generally assume, in the case of represented defendants, that

15

it is the attorney who has failed to object. See *id*. (discussing the concern that "counsel can harbor error as an appellate parachute by failing to object" to a possible structural error). But as discussed, the nature of the claim here—assessing whether defense counsel conceded guilt over the defendant's contrary wishes—is not well-suited to that rule because it would require a defendant to speak out of turn.

Further, like an ineffective-assistance-of-counsel claim, "the errors underlying [*McCoy*] claims often are not apparent from the trial record but instead require additional evidentiary development." See *People v Randolph*, 502 Mich 1, 14; 917 NW2d 249 (2018). Just as a client need not contemporaneously object to their attorney's conduct to preserve a Sixth Amendment claim of ineffective assistance of counsel, see *id*. at 14-15, a client need not do the same to preserve a Sixth Amendment claim that their right of autonomy has been violated. Therefore, assuming without deciding that a *McCoy* violation is an error that is even subject to forfeiture,[7] we conclude that Klungle preserved this claim by raising it with the trial court in a timely postjudgment motion for new trial and evidentiary hearing.[8] The failure to contemporaneously object to the concession of guilt

---

[7] Relying on *People v King*, 512 Mich 1; 999 NW2d 670 (2023), Klungle maintains that the forfeiture doctrine does not apply to a claimed violation of the Sixth Amendment right of autonomy. We held in *King* that the forfeiture doctrine does not apply "where a self-represented defendant fails to object when the trial court fails to obtain a valid waiver of the right to counsel." *Id*. at 4. The right to counsel, we explained, cannot be forfeited because "the right is preserved absent a personal and informed waiver[.]" *Id*. at 14. Therefore, requiring a defendant to object to their own invalid waiver would be an "impractical rule." *Id*. at 14-15. See also *Vaughn*, 491 Mich at 655-657 & n 42 (distinguishing the right to counsel from other constitutional rights that require an affirmative invocation to preserve for appellate review).

[8] The prosecution's position also strikes us as inconsistent with our preservation jurisprudence because it effectively treats the purported forfeiture of a *McCoy* claim as dispositive of the merits. In the prosecution's view, the same omission that forfeits a Sixth

16

neither forfeited nor foreclosed his claim on the merits and thus does not alter our conclusion that Klungle was denied his Sixth Amendment right to maintain innocence as the objective of his defense.

## D. REMEDY

Last is the question of remedy. As noted, a violation of a defendant's Sixth Amendment right of autonomy is a structural error, *McCoy*, 584 US at 427, and when preserved, it requires automatic reversal, *Davis*, 509 Mich at 67. The logic of deeming certain errors structural is that they "affect[] the framework within which the trial proceeds[.]" *Arizona v Fulminante*, 499 US 279, 310; 111 S Ct 1246; 113 L Ed 2d 302 (1991). We don't require a defendant to show prejudice because a structural error is one that is too difficult to measure or that implicates fundamental fairness. *McCoy*, 584 US at 427. The reason a *McCoy* violation is a structural error is twofold: a concession of guilt "blocks the defendant's right to make the fundamental choices about his own defense," and "the effects of the admission would be immeasurable, because a jury would almost certainly be swayed by a lawyer's concession of his client's guilt." *Id*. at 428.

This case presents a factual wrinkle not present in *McCoy*: where an attorney improperly concedes guilt on one charge but contests others, does the structural error require reversal of all convictions obtained in the trial? We conclude, on the facts of this case, that full reversal is appropriate. The charges against Klungle were interconnected

Amendment autonomy claim—the failure to contemporaneously object—also renders that claim facially deficient. In other words, a forfeited claim is necessarily an unsuccessful one. Yet when a claim of structural error is forfeited, that claim may still be proven, but under a heightened standard. See *Davis*, 509 Mich at 67-68 (describing the modified plain-error standard for forfeited structural errors).

17

and arose from one ongoing incident. That is, Klungle allegedly failed to comply with lawful commands and physically resisted two police officers while refusing to leave the property he was trespassing on. Because the common law grants the right to resist an unlawful arrest by an officer, the prosecution must establish as an element of a resisting-or-obstructing charge that an officer's actions were lawful. *People v Moreno*, 491 Mich 38, 51-52; 814 NW2d 624 (2012); M Crim JI 13.1(4). In this case, therefore, the jury was instructed that the prosecution had the burden to show that the police officers acted lawfully when they arrested Klungle for trespassing. Conceding guilt on the trespassing charge necessarily undermined any challenge to this lawful-act element. Although Lyons contested other elements of the felony charges, we think the structural error in conceding guilt on the trespassing charge, under these circumstances, was "intrinsically harmful" so as to "render[] unfair or unreliable the determining of guilt or innocence" by the jury on the resisting-or-obstructing counts. *People v Duncan*, 462 Mich 47, 51; 610 NW2d 551 (2000).[9] A new trial is therefore warranted on all charges.

## IV. CONCLUSION

Trial counsel's concession of guilt on the trespassing charge violated Klungle's Sixth Amendment right of autonomy to maintain innocence on all charges as the objective of his defense. Under *McCoy*, this error is structural and requires automatic reversal. We

---

[9] We decline to address whether the remedy might be different in a case involving a partial concession of guilt where the contested charges arise from separate incidents. But see *Phillips v State*, 570 P3d 936, 947 (Alas App, 2025) (declining to reverse all convictions for a *McCoy* violation where trial counsel conceded guilt on only one sexual-assault charge but the defendant was found guilty of committing three additional sexual assaults against three other victims).

therefore reverse the judgment of the Court of Appeals, vacate Klungle's convictions and sentences, and remand to the Emmet Circuit Court for further proceedings consistent with this opinion. We do not retain jurisdiction.

Kyra H. Bolden
Megan K. Cavanagh
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kimberly A. Thomas
Noah P. Hood